**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELINA CODINA, | Civil Action No. 06-105 (MLC) |
|     Petitioner, | |
| v. | **MEMORANDUM OPINION** |
| MICHAEL CHERTOFF, et al., | |
|     Respondents. | |

**APPEARANCES:**

Angelina Codina, Pro Se
A#76-496-932
Bergen County Jail, D-49009/Dorm N-3-B
160 South River Street, Hackensack, NJ 07601

Neil Rodgers Gallagher
Assistant United States Attorney
970 Broad Street, Suite 700, Newark, NJ 07102
Attorney for Respondents

**COOPER**, District Judge

    Petitioner, a confined alien, petitioned for a writ of habeas corpus under 28 U.S.C. § 2241. The respondents are Michael Chertoff, the Secretary of the Department of Homeland Security; John Clarke, the Director of the Bureau of Immigration and Customs Enforcement; Christopher Shanahan, an Acting Field Director; Alberto R. Gonzales, the United States Attorney General; and William Fraser, the Warden of the Monmouth County Jail.[1]

---

[1] By letter filed on July 17, 2006, Petitioner notified the Court of a change of address from Monmouth County Jail to the Bergen County Jail, and asked to substitute the warden of the Bergen County Jail, Willis Morton, as a respondent, in lieu of William Fraser. The Court will amend the docket.

## BACKGROUND

Petitioner is a citizen of Canada, and native of Uruguay. Petitioner arrived at the John F. Kennedy Airport in New York in January 1998, and was issued a notice to appear by an immigration inspector. The immigration inspector found Petitioner was an arriving alien ineligible for admittance to the United States, citing a violation of the Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(2)(A)(i)(I), as having committed a crime of moral turpitude. The immigration inspector noted that Petitioner was convicted in Canada of a crime involving falsified documents. (See Pet. Ex. 1.) The immigration inspector issued a Notice to Appear for Petitioner to appear before an Immigration Judge ("IJ") on April 3, 1998.

The charges were amended on April 2, 1998, and Petitioner was instead charged with violations of INA §§ 212(a)(7)(A)(i)(I) and (B)(i)(I), codified at 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and (B)(i)(I), alleging that Petitioner did not possess or present valid immigration documents or valid entry documents to enter the United States. (See Pet. Ex. 2.)

An IJ held a hearing on November 3, 1998, and found that the immigration service did not show that Petitioner was inadmissible as charged. The immigration service appealed the decision.

After the hearing, but before the resolution of the appeal, Petitioner was arrested and convicted in New York for state law

crimes, and served a term of incarceration.  On May 15, 2003, the immigration service issued a detainer with New York authorities.

On June 6, 2003, the Board of Immigration Appeals ("BIA") held that the IJ erred, and remanded Petitioner's case to the IJ to determine if Petitioner was eligible for relief from removal.

Petitioner wrote to a Deportation Officer and Field Director for the Bureau of Immigration and Customs Enforcement ("BICE") on July 7 and August 4, 2005, requesting parole pursuant to INA § 212(d)(5).  Her request was denied by letter dated March 8, 2006.

Petitioner also applied to the IJ for a redetermination of her custody status.  (See Pet. Ex. 6).  Her request was denied on July 27, 2005.  The BIA affirmed the decision on October 31, 2005. (See Pet. Ex. 18).  The BIA denied Petitioner's application for bond, stating that the IJ has no authority over the "apprehension, custody and detention of arriving aliens," and citing 8 C.F.R. § 1003.19(h); Matter of Oseiwusu, 22 I&N Dec. 19 (BIA 1998).

Meanwhile, on November 30, 2005, on remand from the BIA, the IJ found Petitioner was (1) an arriving alien, and (2) removable. Petitioner's motions for relief were denied.  Petitioner has appealed that decision to the BIA.  Neither party has informed the Court of that appeal's outcome, so it is assumed that the matter is still pending.

Petitioner filed this petition on January 10, 2006.  On February 3, 2006, this Court transferred Petitioner's claim on the order of removal to the Court of Appeals for the Second

Circuit, in accordance with the Real ID Act; this Court retained jurisdiction over the claims challenging the continued detention.

Respondents filed an Answer on March 20, 2006. Petitioner filed additional submissions on April 20, 2006 and May 2, 2006.

## DISCUSSION

### A.  Standard of Review

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3), which states that the writ extends to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).

### B.  Analysis

The removal order against Petitioner is not yet final, as the appeal therefrom is still pending before the BIA. As such, she is considered in "pre-removal order" detention, and the protections afforded by Clark v. Martinez, 543 U.S. 371 (2005), do not yet apply to her situation.[2]

---

[2] Post-removal-order aliens, deemed inadmissible to the United States, may not be detained indefinitely pending removal, but may be detained for a reasonable time, presumptively six months, so the Government may effectuate removal. 543 U.S. at 378.

4

Petitioner is being held pursuant to 8 U.S.C. § 1225(b)(2)(A), which states, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).[3]

Petitioner — as an arriving alien — thus may be released from detention by a grant of parole at the Attorney General's discretion.  See 8 U.S.C. § 1182(d)(5).  Section 1182(d)(5) governs the temporary admission of nonimmigrants, and provides that the Attorney General has the discretion to "parole into the United States temporarily under such conditions as he may prescribe on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  Parole is not an admission of the alien, but rather granted for a temporary, specific purpose.  Id.[4]

Aliens charged with inadmissibility in removal proceedings may request immigration parole from the district director.  An immigration judge does not have the authority to grant parole to an inadmissible alien.  See 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5(a).  That discretionary power is vested by statute only in

---

[3] Section 1229a governs removal-proceeding procedures.

[4] Title 8 of the Code of Federal Regulations, section 212.5 lists groups of aliens who, on a case-by-case basis, may be eligible for parole under § 1182(d)(5)(A), including aliens with a serious medical condition, pregnant women, juveniles, aliens who will be witnesses in proceedings, and aliens whose continued detention is "not in the public interest."

the Attorney General who may delegate the power to the INS District Directors. 8 U.S.C. § 1182(d)(5).

Petitioner's parole request under 8 U.S.C. § 1182(d)(5)(A) was denied. The Court cannot review this denial of discretionary relief in a habeas action, as the statute expressly grants the Attorney General discretion to grant or deny parole. See 8 U.S.C. § 1252(a)(2)(B); Khan v. Att'y Gen., 448 F.3d 226, 231 (3d. Cir. 2006) (where statute expressly grants discretion to Attorney General, § 1252(a)(2)(B)(ii) bars jurisdiction of courts on relevant immigration matters); Shaybob v. Att'y Gen., 2006 WL 1995743, at *1 (3d Cir. July 17, 2006) (noting court may not review denials of discretionary relief, but "non-discretionary aspects of discretionary decisions," such as constitutional claims or statutory interpretation, may be reviewed). Therefore, Petitioner's denial of parole by the Attorney General is a discretionary decision, and not reviewable here.

The Court also finds that Petitioner is not entitled to an individualized bond hearing. Respondents concede that "if the Petitioner were found to be entitled to any relief it would not be outright release, but rather at most [a] bond hearing before an IJ." See Ans., pp. 11-12. Respondents cite Alaka v. Elwood, 225 F.Supp.2d 547 (E.D. Pa. 2002) in support.

The Alaka petitioner, a lawful permanent resident, spent eight months in Nigeria and then returned to the United States

6

via John F. Kennedy Airport in New York.  225 F.Supp.2d at 549. On arrival, she was detained when immigration officials discovered an outstanding federal warrant against her.  Id. Thus, she was considered an "arriving alien," under INA § 101(a)(13)(C)(v), codified at 8 U.S.C. § 1101(a)(13)(C)(v).  Id.

   The Alaka petitioner sought parole under 8 C.F.R. § 212.5(b), which was denied, but also petitioned the immigration court for an independent bond hearing for release from detention.  See id. at 549-50 & n.10.  The IJ determined that the Alaka petitioner was entitled to a bond hearing based upon Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001).  See id. at 550 n.11.  The Patel court held that "mandatory detention of aliens after they have been found subject to removal but who have not yet been ordered removed because they are pursuing their administrative remedies violates their due process rights unless they have been afforded the opportunity for an individualized hearing ."  Patel, 275 F.3d at 314.  While Mr. Patel was a lawful permanent resident being detained pre-removal-order following a conviction of a crime constituting an aggravated felony, the IJ in Alaka found that the Patel holding was broad enough to encompass arriving aliens who were lawful permanent residents.  See Alaka, 225 F.Supp.2d at 550 n.11, 557.  The IJ further noted that while immigration judges were specifically precluded from reviewing the custody of an arriving alien by regulation, the regulation could not survive the Patel decision.  See id. at 550 n.11.

7

Upon appeal to the BIA, the IJ's order releasing Alaka on bond was vacated.  Id. at 550.  The BIA found that neither the BIA nor the IJ had authority to review custody determinations of arriving aliens, and that unlike the alien in Patel, Alaka was an arriving alien.  Id. at 551 n.15.  The BIA found no express reference to arriving aliens in the Patel case.  Id.

But the district court agreed with the IJ, and found that Patel was "sufficiently broad to encompass those lawful permanent resident aliens in regular removal proceedings, such as Alaka, who are otherwise classified as 'arriving aliens' under § 101(a)(13)(C) of the Act."  Id. at 559.  Thus, that court surmised due process requires "'an individualized inquiry into the reasons for detention.'"  Id. (quoting Patel, 275 F.3d at 311).  That court continued to hold that the parole process of 8 C.F.R. § 1182(d)(5)(A) does not satisfy due process as it is based on a cursory review of an alien's file.  Id.

Therefore, based on Patel, Ngo v. INS, 192 F.3d 390 (3d Cir. 1999) (which granted a bond hearing to a post-removal-order alien who was excluded from the country), and Zadvydas v. Davis, 533 U.S. 678 (2001) (which granted a bond hearing to a post-removal-order former lawful permanent resident ordered deported for criminal convictions), the Alaka district court concluded:

> that a bond hearing be offered to Alaka.  The detention
> of lawful permanent resident arriving aliens after they
> have been found subject to removal but who have not yet
> been ordered removed because they are pursuing their

>administrative remedies violates their due process rights unless they have been afforded the opportunity for an individualized hearing at which they can show that they do not pose a flight risk or a danger to the community.

Alaka, 225 F.Supp.2d at 559-60.

The Alaka court relied on Patel, but Patel has since been abrogated in Demore v. Kim, 538 U.S. 510 (2003). Kim also dealt with a lawful permanent resident who was detained pre-removal-order as a deportable criminal alien. The Kim court found that a bond hearing was not constitutionally required, as the alien was pre-removal-order, and the detention had a definite termination point. Id. at 527-31. The Kim court, in rejecting Kim's due process arguments, noted that "when the government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." Id. at 528. Further, the Court held that mandatory detention without a bail hearing pre-removal-order is "a constitutionally permissible part" of the removal process. Id. at 531.[5]

---

[5] The Alaka district court also noted the non-precedential case of Radoncic v. Zemski, 28 Fed.Appx. 113 (3d Cir. 2001), which found that arriving criminal aliens who are not permanent lawful residents, are entitled to a bond hearing. See Alaka, 225 F.Supp.2d at 560 n.62. Based on Kim, the Supreme Court granted certiorari to consider the Radoncic case. The Supreme Court vacated the judgment in Radoncic and remanded in light of Kim. See Riley v. Radoncic, 538 U.S. 1010 (2003). The Third Circuit, in turn, vacated its prior decision and remanded to the district court for disposition. See Radoncic v. Zemski, 74 Fed.Appx. 158 (3d Cir. 2003). The district court granted the alien's motion to dismiss the case as moot, and the case was closed. See Radoncic v. Zemski, No. 00-4394 (BWK) (E.D. Pa.) (docket entry no. 22).

9

The cases cited above pertain to pre-removal-order detention of lawful permanent residents charged as deportable criminal aliens, or lawful permanent residents whose status is changed to that of an arriving alien pursuant to criminal acts.  Here, Petitioner has not been charged as a criminal alien.  Nor has it been determined that Petitioner is a lawful permanent resident.  As far as this Court can ascertain, Petitioner, although she has committed various crimes, is being held pursuant to 8 U.S.C. § 1225(b)(2)(A), as not "clearly and beyond a doubt entitled to be admitted," and was charged with not possessing valid immigration documents.  While the inspection officer did originally charge Petitioner as ineligible for admittance due to having committed a crime of moral turpitude, the charges were later amended by the immigration service to the charges of not possessing valid immigration documents.

The Court, despite this difference, finds that Petitioner is not entitled to an individualized bond hearing.  The court in Mejia v. Ashcroft was faced with a similar challenge regarding pre-removal-order detention. See 360 F.Supp.2d 647 (D.N.J. 2005).  The Mejia petitioner was an "arriving alien," stripped of his lawful permanent resident status due to committing crimes, under 8 U.S.C. § 1101(a)(13).  Id. at 649-50.  Petitioner also was charged with, inter alia, lack of valid entry documents, under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Id. at 650.  The court noted the petitioner,

as an arriving alien, was detained under § 1225(b)(2)(A) (as is Petitioner here), which requires mandatory detention. See id. at 651. The Court pointed out that grounds for release of such an alien, under the parole statute of § 1182(d)(5), were "extremely narrow." Id. (citing Tineo v. Ashcroft, 350 F.3d 382 (3d Cir. 2003)). Noting the differences between the petitioner's situation in Kim and Mejia's situation, the Court denied Petitioner a bond hearing, reasoning that Kim was "equally applicable" to Mejia's case. See id. at 652. Quoting Tineo, the court found that Kim cast "substantial doubt on the viability of a due process challenge" to the mandatory detention of aliens pursuant to § 1101(a)(13)(C), § 1182(d)(5)(A), and § 1225(b)(2)(A). See id. (quoting Tineo, 350 F.3d at 399 n.12; other cite omitted).

The court in Zubeda v. Elwood similarly denied a bond hearing to a petitioner, a pre-removal-order arriving alien, who had not entered the country, formally or otherwise. 265 F. Supp.2d 509, 512-13 (E.D. Pa. 2003). The Zubeda court noted the petitioner, as an alien who had not entered the country, was not afforded the same due process protections as aliens who had entered the United States. Id. at 512. That court distinguished Patel and Alaka, pointing out that the petitioners in those cases had been lawful permanent residents; the Court distinguished Ngo and Radoncic, pointing out that the petitioners in those cases had resided in the United States for years before being taken into immigration custody. Id.

11

This Court agrees with the reasoning in Mejia and Zubeda. Petitioner here is not a lawful permanent resident. She is being detained pre-removal-order, pursuant to the mandatory provision of § 1225(b)(2)(A). Based upon the Supreme Court's decision in Kim, as outlined above, the Court finds that Petitioner is not entitled to a bond hearing.[6]

## CONCLUSION

The petition will be denied. An appropriate order and judgment follows.

s/ Mary L. Cooper<br>
**MARY L. COOPER**<br>
United States District Judge

---

[6] As noted, Petitioner's claims challenging the IJ and BIA's finding that she is an arriving alien, the finding that she is not a lawful permanent resident, and arguments otherwise challenging her removal order are not before this Court, as they were transferred to the Court of Appeals for the Second Circuit pursuant to the Real ID Act.